# CHARLESTON.

## STATE v. A. N. ISNER.

Submitted October 17, 1922.    Decided October 24, 1922.

1.  JUDGMENT—*Adjudication of Suit by State to Sell Lands Purchased for Taxes Does Not Preclude Unknown Claimant Not Appearing From Asserting Equitable Rights.*

    A decree of sale of land, as being waste and unappropriated in a suit brought by the State for the purpose of such sale, under the provisions of ch. 105 of the Code, does not, by way of former adjudication, preclude right in one proceeded against in such suit, as an unknown claimant of the land, to file his petition for an award to him, upon proof of his title, of the proceeds of the land sold under the decree, in excess of the taxes on it and the costs of the proceeding, he not having appeared in the suit nor asserted his claim of title therein, before the entry of such decree. (p. 153).

2.	APPEAL AND ERROR—*Finding on Conflicting Evidence Not Disturbed on Appeal.*

	A finding against the petitioner, by the trial court, upon the issue as to title, raised upon such a petition, dependent upon sharply conflicting evidence in which there is very slight probative value in favor of the petitioner, if any at all, and no preponderance against the finding, cannot be disturbed by the appellate court. (p. 153).

Appeal from Circuit Court, Randolph County.

Suit by State of West Virginia against A. N. Isner and Nellie M. Hebb, administratrix of the estate of Thomas F. Hebb, deceased, and others for the sale of lands forfeited or sold and purchased by the state, for non-payment of taxes, and as having been waste and unappropriated lands. From a dismissal of petition by defendant Hebb that there be decreed to her the excess of the purchase money for which the land had been sold over and above the taxes chargeable thereon and the cost of the proceedings, she appeals.

*Decree affirmed.*

*W. B. & E. L. Maxwell,* for appellant.
*John F. Brown,* for the State.

POFFENBARGER, PRESIDENT:

In this suit instituted by the State for the sale of a number of tracts of land, some of them, as having been forfeited or sold and purchased by the State, for non-payment of taxes, the others, as having been waste and unappropriated land, and in which a certain tract of land containing 150½ acres was sold, as being waste and unappropriated land, Nellie M. Hebb, administratrix of Thomas F. Hebb, deceased, on the 18th day of June, 1919, filed her petition, under the provisions of sec. 16, of ch. 105 of the Code, charging that such tract of land was not waste or unappropriated, but had been owned by her decedent, Thomas F. Hebb, and praying that there be decreed to her the excess of the purchase money for which the land had been sold, over and above the taxes chargeable thereon and the costs of the proceedings. This claim was resisted by the State and, on final hearing,

the petition was dismissed. From the decree of dismissal, the administratrix has appealed.

The decree adjudging the land to have been waste and unappropriated, ordering sale thereof and confirming the sale, are invoked on this appeal in the argument for the State, as constituting a former adjudication binding petitioner and the heirs of Hebb, on the ground that they had been made parties to the suit, as unknown claimants. None of them were formal parties, nor did any of them intervene or come into the suit by petition or otherwise, before those decrees were entered. It was after the land had been sold for the sum of $7,300.00, that this petition was filed, to obtain an award to the petitioner of the surplus amounting to about $5,600.00. It seems to be conceded that, in the case of a surplus arising from land sold in such a proceeding as this as having been forfeited or purchased by the State and become irredeemable, the former owner, his heirs, personal representative or assigns, or a creditor having a lien on the land at the time of the forfeiture and still existing, may file his petition and have the surplus awarded to him, even though he was proceeded against as an unknown claimant or otherwise, and had failed to interpose any claim to the land prior to the sale. The argument for the State seems to be that, inasmuch as, theoretically, there is no former owner of waste and unappropriated land, the surplus arising from the sale of such land does not fall within the provisions of said section 16, and that an adjudication, fixing its character as such, is binding upon everybody. This position is obviously untenable. The preceding sections of the chapter deal with waste and unappropriated land, as well as lands forfeited and purchased by the State, and put them on the same basis. All of them are proceeded against in the same way and lands of different classes may be embraced in the same suit. Section 16, without making any distinction, provides that the former owner of any such lands, as are mentioned in the preceding sections, his heirs, etc., may file a petition for the surplus and, on proof of title, obtain an award thereof. Although, in point of theory, unappropri-

ated land has no former owner, it is apparent that all lands proceeded against, as such, are not of that character and that some of them may have been owned by somebody and become forfeited and that, in such a case, there is a former owner, and, if so, that the land falls within the descriptive terms of said section 16, conferring right to establish the fact and take the surplus. The land and the surplus proceeds arising from the sale thereof are treated by the statute as separate subjects to some extent. The former owner does not lose his right to the surplus proceeds, by his failure to resist the sale of the land. This is clearly manifest. He must be made a party and given an opportunity to save his land from sale, but he is also given the right, in express terms, to seek award of the surplus.

The petition was dismissed on the ground of failure in the effort to identify the 150½-acre tract of land, as being land included in or covered by the title under which it was claimed. The location of that tract is well and firmly established, but the location of the land to which Thomas F. Hebb had title was not, in the opinion of the trial court, so fixed and defined by the evidence, as to bring the other tract within it. Hebb's deed, by its terms of disposition and description, calls for 3,477 acres. The land claimed under it, as surveyed by one Bowman, has an area of about 5,000 acres. It is alleged to have been a part of a 25,000-acre grant made by the Commonwealth of Virginia, to William DeWeese, February 20, 1796. Claiming 3,477 acres, part of this grant, J. Wise Norton, by a deed dated June 16, 1890, conveyed it to William A. Barrett, Jr., by the following description: ''Beginning at a white ash on east side of Dry Fork, on a line of the east end of a survey of Charles Simms and Charles Lee; thence running with said line east 960 poles to a point therein; thence leaving the same and running south 1,740 poles to a cucumber; thence joining a survey of William and Francis Deakin, and running north 30 West 2,000 poles to the point or place of beginning.'' At the suit of Bank of the Ohio Valley, this land was sold, as the property of Barrett, under an attachment, by virtue of an order of sale, dated March

16, 1892, and purchased by said bank. In the name of that bank, it became delinquent for non-payment of the taxes thereon for the years 1895 and 1896, and was sold by the sheriff of Tucker County and purchased by the State of West Virginia, and, not having been redeemed, a suit was instituted by the State, for the sale thereof, in which decree of sale was entered March 7, 1901. At the sale made under that decree, Thomas F. Hebb bought it and obtained a deed for it. The description of the land in the deed made pursuant to the attachment sale is exactly the same as that in the deed executed to Barrett; and the one found in the deed to Hebb, made by Lipscomb Commissioner of School Lands, merely describes the land as being the tract sold in the name of the bank. In the deeds to Barrett from Norton and to the bank from the sheriff, the land is further described as being a part of the DeWeese 25,000-acre grant.

The only evidence adduced to sustain the allegations of the petition, as to identity of the land, is that of Surveyor Bowman and certain plats filed by him, one of which he made and another of which he took or copied from the files of another suit to which the State had not been a party. The latter was made by one Kile, now deceased. It was not verified in any way, unless it could be said that its use in another suit authenticated it and gave it probative value. It is very much like the one made by Bowman, in conformity with the surveying done by him. How it may have been treated in the suit from which it was taken, or what probative value, if any, it was allowed in that suit, does not appear, if evidential virtue could have been imparted to it, by proof of such facts. There is no occasion to say whether the objection to its admission was well taken, since the court below accorded it no weight and we are of the opinion that the evidence of Bowman, supplemented by the mere coincidence of the results of his investigation and Kile's, is clearly insufficient to prove identity of the lands. The only tangible thing he found, upon which to base his surveys of the DeWeese and Norton lands, was an old mark. He merely assumed that it was in a line of the DeWeese patent. He had no personal knowledge that

it was and he never found any of the monuments specifically called for in the patent or the Norton deed. Nor did he find any of the monuments called for in the deed to Barrett, although he surveyed the land for Barrett, before the deed to him was made, and marked the lines and corners. Unfortunately, the deed to Barrett did not describe the land as Bowman surveyed it. The timber he marked and monuments he designated in his survey are not mentioned in any deed. Norton conveyed to Barrett, by the description under which the land had been conveyed to him, wherefore Barrett may have obtained an entirely different tract from the one he supposed he was buying, the one Bowman surveyed, for Bowman did not know whether he was surveying the Norton land or not. He says somebody told him it was the Norton land and he found a very old mark, and it was upon that information and discovery, that he surveyed a tract of land which embraces part of the land in controversy. This mere opinion of his as to the location of the Norton land is opposed by the opinions of two or three other witnesses whose opportunities for knowledge of the facts were equally as good as his. They all say that neither the DeWees Tract nor the Norton Tract can be located. In view of this state of the evidence, the finding of the trial court cannot be disturbed. The issue is one of fact and there is no preponderance in the evidence against the finding.

For the reasons stated, the decree complained of will be affirmed.

*Decree affirmed.*